IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| DEBRA SINQUEFIELD, f/k/a Debra Ricks, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CASE NO. 4:04-CV-18(CDL) |
| CLAY COUNTY, GEORGIA, et al., | * | |
| | * | |
| Defendants | * | |

O R D E R

Defendants' Motion for Summary Judgment (Doc. 28) is presently pending before the Court. For the reasons set forth below, the motion is granted as to Plaintiff's federal claims. The Court declines to exercise jurisdiction over Plaintiff's state law claims, and those claims are dismissed without prejudice. Also before the Court are Defendants' motions to strike portions of affidavits filed by Plaintiff (Docs. 45 and 65). The Court did not rely upon any evidence in the affidavits that is not admissible, and the motions to strike are denied as moot.

FACTUAL BACKGROUND

This lawsuit arises from Defendants' participation in a criminal investigation and prosecution of the Plaintiff, a former employee of Defendant Clay County. Plaintiff contends that Defendants' actions give rise to federal claims under 42 U.S.C. §§ 1983 and 1985(3) for the violation of her constitutional rights under the Fourth and Fourteenth Amendments. Plaintiff also asserts state law claims related to Defendants' alleged malicious prosecution of her.

Plaintiff, a black woman, was employed as the Solid Waste Billing Clerk for Clay County. In Clay County, each residence that is inhabited and has electrical power is automatically charged a refuse tax, a monthly payment for curbside garbage pick-up. Clay County keeps records of balances owed by each resident for the refuse tax. During her employment with Clay County, Plaintiff's task was to maintain the computer records for the Clay County refuse tax accounts. She began this employment on March 3, 2000, and she resigned on May 4, 2001 in anticipation of her upcoming marriage and relocation to Florida.

Clay County refuse tax accounts could be closed from the computer which Plaintiff operated.[1] Closed accounts did not receive bills or accrue refuse tax charges. In addition, refuse tax balances owed by each resident could be manipulated from the computer which Plaintiff operated. However, the record of payments to refuse tax accounts could not be manipulated from the computer which Plaintiff operated. Therefore, it was possible for refuse tax account balances to be reduced without corresponding payments.

Defendant William Kenyon was the County Administrator for Clay County while Plaintiff was employed by Clay County. According to Kenyon, several discrepancies in the refuse tax accounts were

---

[1] Defendant William Kenyon, the former County Administrator for Clay County, provided a basic description of how the refuse tax records were maintained in the Clay County computer system, explaining that accounts could be closed and that balances could be manipulated without a corresponding payment. Although Plaintiff notes in her response to Defendants' Motion for Summary Judgment that Kenyon has stated that he does not know how to use computers, Plaintiff has not presented evidence to rebut Kenyon's basic description of how the refuse tax account system was structured or his assertion that accounts could be closed or manipulated from the computer Plaintiff operated.

discovered in March 2001.[2]  Specifically, some accounts of persons owing between $300 and $400 on their refuse tax accounts were "zeroed out," and these accounts, along with others, were closed.  While the accounts were closed, the residents did not receive a refuse tax bill or accrue any refuse tax charges.  Several months later, these accounts were reopened with no outstanding balance.  Defendant Kathy Krivan, who was County Clerk when Plaintiff was employed by Clay County, researched the account records for Kenyon and assisted him with the analysis of those records.

Kenyon raised his concerns regarding the discrepancies to the Clay County Board of Commissioners in a Commissioners' meeting, explaining that some refuse tax accounts, including several with balances, had been closed even though they should not have been closed.[3]  The Board of Commissioners referred the matter to the county attorney, William Mills.  Several Commissioners met with Mills regarding the refuse tax problem, and Kenyon attended the meeting to explain the problem.  After the meeting with Mills, the matter was referred to the Pataula Judicial Circuit District Attorney's Office,

---

[2] The Court recognizes that Plaintiff contends that the account data is not reliable due to "unexplained entries, modifications and changes in the Refuse accounting program."  (Gladstone Aff. ¶ 29).  However, as discussed *infra*, the account information is not the only evidence that several accounts were "zeroed out" and closed, so this evidence is insufficient to create a genuine issue of material fact as to whether there were discrepancies in the refuse tax accounts.

[3] Kenyon asserted that he raised concerns about discrepancies in the refuse accounts in the March 20, 2001 Commissioners' meeting.  Plaintiff contends that these allegations were not brought to a Commissioners' meeting until June 2001.  (*See* Sands Aff. (1/21/05) ¶ 9.)  The Court recognizes that Plaintiff contends that the timing of the Commissioners' meeting is significant to the question whether Plaintiff was responsible for the discrepancies in the account records.  However, the Court finds that the exact timing of the allegations is not material to the basic sequence of events in this case.

3

and on June 7, 2001, the District Attorney's Office requested that the Georgia Bureau of Investigation ("GBI") conduct an investigation regarding the suspected diversion of county funds by Plaintiff. The case was assigned to GBI Special Agent Jeff Reed. During the course of his investigation, Agent Reed reviewed county records related to the Clay County Refuse Tax account[4] and interviewed a number of witnesses. Among these witnesses was Defendant Kenyon, who explained the refuse tax account system to Reed and told Reed about the discrepancies. Kenyon also told Reed that the refuse tax account balances could be manipulated from the computer which Plaintiff operated and that several persons whose accounts which had been "zeroed out" and closed were close friends or relatives of Plaintiff. Kenyon did not, however, tell Reed that Krivan was involved in his research and analysis of the account records.

Also among the witnesses interviewed by Agent Reed were Thelma Ricks, Nathaniel Sinquefield, and Betty Hyacinthe.[5] Ricks, who is Plaintiff's mother, told Agent Reed that (1) Plaintiff told Ricks that Plaintiff had closed Ricks's refuse tax account, (2) Ricks did not pay the remaining balance on the account, (3) the account was closed for approximately one year (from July 2000 to March 2001), during which time Ricks did not receive a bill for the account, and (4) Ricks knew that Plaintiff had closed her account so that she

---

[4] Plaintiff does not dispute that computer records related to the Clay County Refuse Tax account were provided to Agent Reed during his investigation. Her key contention is that the records are unreliable.

[5] Plaintiff disputes Defendants' material fact statements regarding these witnesses. However, Plaintiff's argument rests on the validity of the *records* provided to Agent Reed; Plaintiff offered no evidence to refute Defendants' assertion that Ricks, Sinquefield, and Hyacinthe made the statements to Agent Reed.

4

would not have to pay it.  Nathaniel Sinquefield became Plaintiff's father-in-law in mid-May 2001, and according to Sinquefield's account record, his account was closed on October 23, 2000 with a balance of $155.  Sinquefield told Agent Reed that he had spoken with Plaintiff regarding his refuse tax account and told Plaintiff that he was having problems paying that account.  Plaintiff told Sinquefield not to worry about it.  For some time after his conversation with Plaintiff, Sinquefield did not receive a bill for the refuse tax. Hyacinthe's account record reflects that on May 25, 2000, her account was closed with a remaining balance of $308 and reopened on April 25, 2001 with a balance of $11.  Hyacinthe, a relative of Plaintiff, told Agent Reed that she did not pay the $308, that she did not remember receiving a refuse tax bill between May 25, 2000 and April 25, 2001, and that she wondered about why the bill had gone from $308 to $11.

When Agent Reed finished his investigation, he turned his file over to District Attorney Charles Ferguson and Assistant District Attorney Ron Smith.  The Clay County Grand Jury returned a True Bill of Indictment against Plaintiff for computer theft and computer trespass on November 18, 2002.  The criminal case against Plaintiff went to trial on January 8, 2003, and the trial judge directed a verdict of not guilty.  Plaintiff was not incarcerated at any time because of this matter.

Plaintiff seeks relief under 42 U.S.C. § 1983 ("§ 1983") and 42 U.S.C. § 1985(3) ("§ 1985(3)").  She also asserts state law claims for malicious prosecution, defamation, intentional infliction of emotional distress, and interference with enjoyment of property.

DISCUSSION

*1. Summary Judgment Standard*

Summary judgment may be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for nonmoving party—there must be more than "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

The summary judgment movant has the burden to show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). *See also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once this burden is met, the burden shifts and the nonmoving party must produce evidence to show that there *is* a genuine issue of material fact. *Celotex Corp.*, 477 at 324; *Clark*, 929 F.2d at 607-08. When the combined body of evidence is presented, the movant should be granted summary judgment only if the evidence, viewed in the light most favorable to the nonmoving party, would not permit a reasonable jury to find for the nonmovant. *Anderson*, 477 U.S. at 251-52; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

*2. § 1983 Claims*

To make a case under § 1983, Plaintiff must prove that Defendants acted under color of state law to deprive her of a right, privilege, or immunity secured by the Constitution or a federal law. *See* 42 U.S.C. § 1983. Plaintiff contends that Defendants acted under color of state law to deprive her of her rights protected by the Fourth Amendment and the Fourteenth Amendment by falsely charging her with diverting county funds, by treating her differently than a similarly situated white employee, and by referring the allegations to the GBI without first offering her notice and an opportunity to be heard.

*a. Fourth Amendment Malicious Prosecution Claim*

Plaintiff asserts a § 1983 claim for malicious prosecution based on the alleged fabrication of evidence against her by Defendants Kenyon and Krivan. Plaintiff contends that Defendants Kenyon and Krivan created the evidence implicating her in the diversion of county funds to cover up their own illegal activity and to frame her for it. Plaintiff maintains that she never closed any refuse tax accounts without permission and that due to the improper actions of Defendants Kenyon and Krivan, false and misleading information was presented to the County Commissioners, the District Attorney, and the GBI. This false and misleading information, Plaintiff argues, led to her investigation, indictment, and prosecution.

To state a federal malicious prosecution claim under § 1983, Plaintiff must prove (1) the elements of the common law tort of malicious prosecution and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). Thus, even if she can

7

establish all of the elements of common law malicious prosecution, Plaintiff cannot state a § 1983 claim for malicious prosecution unless she also shows that she was "seized" within the meaning of the Fourth Amendment. To establish a "seizure" arising from malicious prosecution that violates the Fourth Amendment, Plaintiff must prove that, after her indictment, she was subjected to a significant deprivation of liberty. *Id.* at 1235-36. This she has not done. Plaintiff has presented no evidence that she was taken into custody or incarcerated after she was indicted. No evidence has been submitted from which a reasonable jury could conclude that she was significantly restricted in her pretrial freedom of movement. There is simply no evidence of a seizure as contemplated by the Fourth Amendment.

Because Plaintiff cannot prove a violation of her Fourth Amendment right to be free from unreasonable seizures, she does not have a cognizable federal claim under § 1983 for malicious prosecution. Defendants are therefore entitled to summary judgment on this claim.

> b. *Fourteenth Amendment Equal Protection/Selective Prosecution Claim*

Plaintiff also claims that Defendants violated her Fourteenth Amendment right to equal protection by submitting allegations against her to the District Attorney and the GBI for investigation based upon her race. In support of this claim, Plaintiff alleges that Defendants did not present these authorities with allegations that Defendant Krivan, a white Clay County employee, had committed theft of county funds.

8

It is true that the Constitution prohibits selective enforcement of the law based on considerations such as race. *See Whren v. United States*, 517 U.S. 806, 813 (1996). However, to prevail on a selective enforcement claim, Plaintiff must prove that she was singled out because of her race. She can carry this burden by presenting evidence that she was treated differently than a similarly situated white employee.

In this case, Plaintiff has not produced sufficient evidence from which a reasonable jury could conclude that she was treated differently than a similarly situated white employee. Plaintiff contends that the impetus behind her criminal investigation and prosecution was the Clay County Commissioners' referral of the matter to the county attorney, who referred the matter to the District Attorney, who referred the matter to the GBI.[6] In support of her selective enforcement claim, Plaintiff alleges that the Clay County Commissioners failed to take the same action with regard to Defendant Krivan, a white employee who was accused of stealing county funds. Construing the evidence in favor of Plaintiff as required at this stage of the proceedings, Defendant Kenyon, in June 2002, presented the Clay County Commissioners with allegations that Defendant Krivan stole Clay County funds and committed fraud against Clay County. After these allegations were presented, the Commissioners decided on June 18, 2002, to investigate these allegations.[7] In addition, the

---

[6] A county commissioner cannot compel the GBI to conduct an investigation; the investigation request must come from an official such as a district attorney, judge, or police chief.

[7] It is unclear what happened during the investigation of 2002. The only evidence on this point appears to be the affidavit of Byron Sands, a former Clay County Commissioner and Plaintiff's half brother. The

undisputed evidence shows that the Commissioners requested in December 2004 that the District Attorney seek a GBI investigation of the allegations against Defendant Krivan. The evidence, even when construed in Plaintiff's favor, simply does not support her allegations. Plaintiff has failed to produce evidence from which a reasonable jury could conclude that she was treated differently from a similarly situated white employee. Therefore, Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

*c. Fourteenth Amendment Due Process/Defamation Claim*

Plaintiff also asserts a due process claim under § 1983, alleging that Defendants deprived her of property without due process of law because she lost her employment with a new employer in Florida when the new employer learned of Plaintiff's criminal investigation during a background check.[8] Plaintiff contends that the Due Process Clause of the Fourteenth Amendment required that she be given notice and an opportunity to be heard prior to the matter being submitted to the GBI for investigation. Plaintiff's position is preposterous.

---

affidavit does not, however, set forth a clear statement of facts regarding what happened in 2002. Rather, it contains a number of contradictory statements regarding the resolution of the 2002 allegations against Krivan, some or all of them hearsay. According to the affidavit, an investigation was requested in 2002 and was resolved in Krivan's favor *or* there was no investigation request because the Commissioners received additional evidence that exonerated Krivan (though Sands asserts that he determined that the exculpatory evidence was fraudulent and that he told the other Commissioners so). The Court cannot find from Sands's contradictory, unclear statement—some or all of which is inadmissible hearsay—that Plaintiff has created a genuine issue of material fact that she was treated differently from Krivan *and* that she was similarly situated to Krivan.

[8] This appears to be a "stigma-plus" defamation argument. *See, e.g., Paul v. Davis*, 424 U.S. 693, 712 (1976) (recognizing that damage to reputation in connection with damage to a recognized property interest may give rise to cause of action for deprivation of property actionable under § 1983).

10

Under Plaintiff's argument, no person suspected of criminal conduct could be *investigated* by law enforcement officers unless the persons seeking the investigation first conduct their own investigation. The Fourteenth Amendment does not create such a right. The Clay County Commissioners sought to have the GBI investigate claims against Plaintiff for the very purpose of having an impartial investigator determine what happened so that the District Attorney would have enough information to decide whether any criminal proceeding against Plaintiff was warranted. The Court is unaware of any controlling authority supporting Plaintiff's contention that an employee under suspicion for criminal conduct is entitled to a pre-investigation hearing. Defendants are entitled to summary judgment on Plaintiff's due process claim.

*2. § 1985(3) Claim*

In addition to her § 1983 claims, Plaintiff asserts that Defendants committed conspiracy to interfere with her civil rights in violation of § 1985(3). The elements of a cause of action under § 1985(3) are: "(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Trawinski v. United Technologies*, 313 F.3d 1295, 1299 (11th Cir. 2002).

For the same reasons that Plaintiff's § 1983 claims fail on the merits, Plaintiff's § 1985(3) claim must likewise fall. Plaintiff has simply failed to produce any evidence from which a reasonable

jury could conclude that Defendants deprived her of any "right or privilege." *See Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001). Therefore, Defendants are entitled to summary judgment on Plaintiff's § 1985(3) claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 28) is granted as to Plaintiff's federal claims. The Court declines to exercise jurisdiction over Plaintiff's remaining state law claims, and those claims are dismissed without prejudice. Defendants' motions to strike (Docs. 45 and 65) are denied as moot.

IT IS SO ORDERED, this 12th day of September, 2005.

                                                S/Clay D. Land
                                                    CLAY D. LAND
                                  UNITED STATES DISTRICT JUDGE